UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


GERMAINE BOMAR, *et al.*,

        Plaintiffs,

                                    Civil No. 08-12629
                                    Hon. John Feikens

        v.

CITY OF PONTIAC, *et al.*,

        Defendants.
_____

**OPINION AND ORDER ADOPTING IN PART
REPORT AND RECOMMENDATION (Dkt. 46),
OVERRULING OBJECTIONS (Dkts. 47, 49),
GRANTING DEFENDANTS' MOTION (Dkt. 39), AND
GRANTING IN PART DEFENDANTS' MOTION (Dkt. 20)**

## I. INTRODUCTION

This cause of action arises out of Plaintiffs' 42 U.S.C. § 1983 claims for excessive force,

unlawful entry and seizure, and state-law claims of false arrest/imprisonment, assault and battery,

and intentional infliction of emotional distress. Defendants include three police officers, Daniel

Main, David Wheatcroft, and Brian Wood, each being sued individually and in his official capacity.[1]

Plaintiffs' claims arise out of an incident on September 11, 2007, in which Plaintiff Germaine

Bomar, and her minor child, K.M., were taken into police custody in an admitted case of mistaken

identity. Minor child K.B. witnessed many of the events that evening, but none of the Defendants'

actions were directed towards her.

Defendants filed a Motion For Summary Judgment Based Upon Qualified Immunity (Dkt.

_____

[1]Defendant City of Pontiac was dismissed by stipulation on April 23, 2010. (Dkt. 59).

20), and, upon leave of the Court, filed a separate Motion For Summary Judgment Of The Claims

Brought By K.B. (Dkt. 39). The Motions were fully briefed. After hearings on the Motions,

Magistrate Judge Hluchaniuk issued a Report and Recommendation (the "Report") (Dkt. 46), in

which he recommended that all claims be dismissed except for the following claims by Plaintiff

Germaine Bomar against Defendant Main: (1) her constitutional right to be free from excessive force

after she was handcuffed; (2) her state-law-battery claim for actions occurring after she was

handcuffed; and (3) her claim for intentional infliction of emotional distress ("IIED").[2]

Defendants filed objections to the recommendations for partial denial of its motions.[3] (Dkt.

47). And Plaintiffs filed objections to the recommendations for partial grant of Defendants' motions.

(Dkt. 49). The objections have been fully briefed. For the reasons that follow, I ADOPT IN PART

and REJECT IN PART Magistrate Judge Hluchaniuk's Report, OVERRULE Plaintiffs' objections,

OVERRULE Defendants' objections, GRANT Defendants' Motion For Summary Judgment Of The

Claims Brought By K.B., GRANT IN PART Defendants' Motion for Summary Judgment Based On

---

[2]The Report is unclear on the recommendation regarding Germaine Bomar's IIED claim. On page 37, regarding this claim, the Report states: "Given the foregoing conclusions . . . the undersigned suggests that, likewise, there remains a question of fact as to whether the alleged force was extreme and outrageous." (citing *Wells v. City of Dayton*, 495 F. Supp. 2d 797, 815 (S.D. Ohio 2006) (permitting the plaintiff's IIED to withstand summary judgment where there was a question of fact regarding his Fourth Amendment / § 1983 claim arising from the same facts)). This statement appears to recommend that Ms. Bomar's IIED claim should survive summary judgment. On page 38, however, the Report concludes that *only* Germaine Bomar's § 1983 excessive-force claim and state-law-battery claim for actions after she was handcuffed survive, and "[a]ll other claims . . . should be DISMISSED with prejudice."

I will assume that the Report's analysis was correct (i.e. the Magistrate Judge intended for Germaine Bomar's IIED claim to survive), but the conclusion erroneously omitted that claim from the list of surviving claims.

[3]Because of the confusion regarding Germaine Bomar's IIED claim, I will assume that Defendants intended to challenge *all* surviving claims, and will review the findings regarding the IIED claim *de novo*.

Qualified Immunity, and DISMISS WITH PREJUDICE Plaintiffs' claims *except* as listed in the Conclusion below.

## II. BACKGROUND

Because Magistrate Judge Hluchaniuk provided an extensive recitation of the facts, I will provide only a brief summary here. On September 11, 2007, Defendants were conducting a drug raid at a house on Neome Street in Pontiac, Michigan. Defendant Main was one of the officers in charge that night. During the course of that raid, Defendants received phone calls on the drug dealers' seized cell phones revealing that other drug dealers and weapons traffickers were coming to the home. Based on the contents of those calls, Defendants believed that a vehicle would be arriving containing drugs, handguns, and AK-47 semi-automatic weapons. Shortly thereafter, a vehicle arrived, but reversed from the scene at a high rate of speed when officers approached to secure the vehicle. The officers collective identification of the vehicle described it as a tan or pewter colored four-door sedan, possibly a Ford Taurus. Collectively, they saw the vehicle was driven by a lone black male, possibly in his 20's.

Although Defendants briefly lost sight of the vehicle, they saw the direction in which it traveled and "gave chase" in an attempt to cut off the fleeing car. The officers, seeing no activity, believed that the vehicle may have pulled into a driveway to hide. The Defendants perceived a tan Taurus in Plaintiffs' driveway to be similar to the vehicle that fled the drug raid. As they approached, a black male "appear[ed] on the other side of the car like [he] had stood up." (Dkt. 20, Ex. B, at 23). The officers apparently believed the male had been hiding behind the vehicle. With the benefit of 20/20 hindsight, however, they later learned he was 13-year-old K.M., who was waiting for his unleashed dog to relieve itself.

Defendants commanded the male to stop, but he ran behind the house and entered the back door of the home. Officer Main followed him several steps into the home, believing the male to be engaging in a home invasion. At that point, Plaintiff Germaine Bomar started attacking Officer Main and telling him to get out of her home. At the time, however, Officer Main thought she was attacking K.M. and telling *him* to get out of the house. When Main realized the woman was actually attacking him, he handed K.M. off to another officer and turned to stop Ms. Bomar's attacks. Before K.M. was removed from the home, he alleges he was hit in the head with a flashlight and knocked to the ground. He then was taken outside, apparently without further incident, and handcuffed. Meanwhile, Ms. Bomar and Officer Main continued to struggle inside the house, exchanging blows. At some point, Main pulled Ms. Bomar outside and restrained her in handcuffs on the ground. Ms. Bomar claims that *after* she was handcuffed, Main pepper sprayed her and punched her in the jaw.

After K.M. and Ms. Bomar were restrained, the Defendants quickly assessed that K.M. was not the individual they were chasing, and both were released. Ms. Bomar returned to the kitchen to resume making dinner. Shortly thereafter, K.M. complained of a headache, and both Ms. Bomar and K.M. went to Pontiac Osteopathic Hospital.

Plaintiff K.B. was 10 years old at the time of the incident. She claims to have witnessed many of the events, including the flashlight blow to K.M. and the pepper spray and jaw punch to Ms. Bomar. It is undisputed that the officers did not physically touch or even communicate with K.B.

### III. ANALYSIS

**A.    Legal Standard For Review Of Report And Recommendation**

The filing of timely objections requires the Court to "make a *de novo* determination of those portions of the report or specified findings or recommendations to which objection is made." 28

U.S.C. § 636(b)(1). *See United States v. Raddtz*, 447 U.S. 667, 100 S. Ct. 2406, 65 L. Ed. 2d 424 (1980); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). This *de novo* review, in turn, requires this Court to re-examine all the relevant evidence previously reviewed by the magistrate judge to determine whether the recommendation should be accepted, rejected, or modified in whole or in part. 28 U.S.C. § 636(b)(1).

"A general objection, or one that merely restates the arguments previously presented is not sufficient to alert the Court to alleged errors on the part of the magistrate judge." *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004). As Judge Cleland further explained in *Aldrich*:

> An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context.
>
> * * *
>
> A general objection to the magistrate's report has the same effect as a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. The duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. *Howard v. Secretary of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

*Id*. at 747-48.

## B.     Defendants' Objections

Defendants offer four objections to the Report. I will discuss each in turn:

### Objection #1

Defendants first object that "it is not plausible for any fact finder to conclude that Germaine Bomar was struck in the jaw after she was handcuffed." Essentially, Defendants argue that the

medical records fail to support Ms. Bomar's claim that she was punched in the jaw, and thus the claim is implausible. Specifically, Defendants claim that the medical records describe injuries or pain to the forehead and neck, but indicate no "dental injury" occurred; Ms. Bomar spoke to the supervising officer after the incident, and there are no allegations that her speech was impaired; nor do the medical records suggest that Ms. Bomar suffered any speech impairment upon presentment to the hospital; Ms. Bomar's behavior after the incident is inconsistent with having suffered a blow serious enough to cause her allegedly severe TMJ problems; and Ms. Bomar does not allege that her pain was sufficiently severe to require immediate medical attention (in fact, she resumed preparation of dinner until her son complained of pain).

Defendants also note inconsistencies between Ms. Bomar's testimony and that of an alleged witness. K.B. testified that Defendant Main punched Ms. Bomar in the jaw *before* he handcuffed her. Moreover, K.B. claims Ms. Bomar was lying on her back, with her face pointing to the sky, (Dkt. 20, Ex. O, at 11), while Ms. Bomar claims she was handcuffed, lying face down, (Dkt. 29, Ex. B, at 52-53), when the blow occurred.

Plaintiffs note that the emergency room records from the night of the incident include a circle indicating a raised area on Ms. Bomar's left cheek. And x-rays of Ms. Bomar's mandible taken that night – although negative for injury – identify the reason for the x-ray as "mandible pain." (Dkt. 20, Ex. H, at 51, 62). The reports also indicate that Ms. Bomar described being "punched in the face" (*id*. at 53) and "assaulted in the back yard" (where Ms. Bomar was handcuffed) (*id.* at 51).

Defendants correctly note that Ms. Bomar also claims that Main punched her in the face *before* she was handcuffed, and she continued to struggle with Main in the backyard before she was handcuffed – which could explain the statements in the medical records. Defendants further argue

that, although Ms. Bomar may have complained of pain to the jaw, the medical records rule out any jaw or dental injury.

I find that Germaine Bomar has presented sufficient evidence to create a genuine issue of material fact about whether Defendant Main struck her in the jaw after she was handcuffed. Although the medical records are reconcilable with Defendants' theory that any injury to Ms. Bomar occurred before she was handcuffed, I am required to consider all reasonable inferences in the light most favorable to Ms. Bomar. In that light, the records are also "reconcilable" with Ms. Bomar's claim of a post-handcuff punch and sufficiently raise her claim beyond the "implausible."

Defendants' Objection #1 is OVERRULED.

## Objection #2

Applying similar logic, Defendants next object that "it is not plausible [for Ms. Bomar] to have been pepper sprayed in light of the totality of the record." According to Defendants, "[i]t is common knowledge that pepper spray . . . [is] a dramatically effective irritant . . . [that] causes the eyes and nose to burn and run with quantities of tears and phlegm." Except for Ms. Bomar's bare allegation that she was pepper sprayed, Defendants submit that there is no "evidence of symptomology" including, for example, "tearing eyes, running nose, difficulty seeing, difficulty talking, etc." The officers at the scene testified that Ms. Bomar was able to "clearly articulate" after her release; she never attempted to flush her eyes or face from the spray, but instead returned to cooking dinner; the hospital records do not reference allegations that she was pepper sprayed or reflect residual inflammation expected from pepper spray; and no evidence suggests that anyone – including K.M., who was laying near Ms. Bomar on the ground – experienced any "drift" from pepper spray.

Plaintiffs respond only that the medical records reflect that Ms. Bomar was "tearful and that her voice was 'shaking.'"

Defendants reply that Ms. Bomar's tearful presentation at the hospital was "consistent with someone who is upset." "What is more telling," they argue, "is the absence of the other symptoms; difficulty seeing, difficulty breathing, running nose, burning eyes, etc." Moreover, Ms. Bomar had conversations with police officers after the incident and later drove the family to the hospital.

Defendants cite numerous cases for the proposition that the non-moving party must present plausible evidence that would lead a rational trier of fact to find in her favor. They contend that the conspicuous absence of evidence of the effects of pepper spray renders Ms. Bomar's allegation that she was sprayed implausible.

Although Defendants' *argument* is compelling, they have not proffered sufficient *evidence* from which the Court must conclude as a matter of law that Ms. Bomar's lack of objective symptomology renders her claim that she was sprayed implausible.[4] Nor have Defendants argued, and the Court does not find, that the effect of pepper spray is the type of fact about which the Court can take judicial notice. Fed. R. Evid. 201.

Accordingly, Defendants' Objection #2 is OVERRULED.

**Objection #3**

Defendants next argue that even if the Court assumes for purposes of this analysis that Defendant Main struck and/or sprayed Ms. Bomar after she was handcuffed, he is still entitled to qualified immunity because Ms. Bomar has presented no evidence that she was subdued after being

---

[4]Defendants have submitted no *evidence* of the effects of pepper spray, nor have they established that those effects are universal.

8

handcuffed. It is Ms. Bomar's burden to establish that the Defendant Main is not entitled to qualified immunity. *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009). A two-part inquiry is applied to evaluate a claim of qualified immunity in an excessive-force case. *Grawey v. Drury*, 567 F.3d 302, 309 (6th Cir. 2009).[5] First, when taken in the light most favorable to the plaintiff, the facts alleged must show that the officer's conduct violated a constitutional right. *Id.* Second, that right must have been "clearly established." *Id.* A right is clearly established if "any officer in the defendant's position, measured objectively, would have clearly understood that he was under an affirmative duty to have restrained from such conduct." *Bouggess v. Mattingly*, 482 F.3d 886, 894 (6th Cir. 2007) (quoting *Dominque v. Telb*, 831 F.2d 673, 676 (6th Cir. 1987)).

The Magistrate Judge cited numerous Sixth-Circuit cases articulating a "clearly established legal norm precluding the use of violent physical force against a criminal suspect who already has been subdued and does not present a danger to himself or others." (Dkt. 46 at 25-26) (quoting *Harris v. City of Circleville*, 583 F.3d 356 (6th Cir. 2009) (citations omitted)). Among those cases, excessive force was found where police officers pepper sprayed a handcuffed person who was not resisting. *See, e.g., Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 895 (6th Cir. 2004); *Adams v. Metiva*, 31 F.3d 375, 387 (6th Cir. 1994). Similarly, a strike or blow to a handcuffed, unresisting person was deemed excessive. *See, e.g., Phelps v. Coy*, 28 F.3d 295, 302 (6th Cir. 2002); *Lewis v. Downs*, 774 F.2d 711, 714 (6th Cir. 1985). In such cases, the constitutional right to be free from excessive force is sufficiently established to deny qualified immunity.

For purposes of this argument, Defendants have asked the Court to presume that Ms. Bomar

---

[5]The Court may consider the inquiry "in whatever order is appropriate in light of the issues." *Moldowan v. City of Warren*, 578 F.3d 351, 375 (6th Cir. 2009) (citing *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009)).

was punched in the jaw and pepper sprayed after she was handcuffed.  Defendants claim, however, that Ms. Bomar has not offered any evidence that she was no longer resisting Defendant Main.  Main testified, however, that it was not difficult to get the handcuffs on Ms. Bomar, and she was "vocalizing" "probably a little bit higher" than conversational tone.  And Defendant Wood testified that Main handcuffed Ms. Bomar "without any problems."  Wood also testified that, after she was handcuffed, Ms. Bomar "was still screaming and yelling and combative as far as – I shouldn't say – she was *verbal*, by combative." (emphasis added).  Additionally, Defendants admit that, shortly after the handcuffs were secured, the situation was sufficiently under control to permit the officers quickly to determine that K.M. was not their suspect and to release both sets of handcuffs.  There is no record evidence suggesting that Ms. Bomar was a threat to herself or anyone else, or that she continued to resist after being handcuffed.  Construing the facts and reasonable inferences in the light most favorable to Plaintiffs, there is a genuine issue of material fact regarding whether Ms. Bomar was sufficiently restrained, and thus, whether Defendant Main's presumed use of force after Ms. Bomar was handcuffed was excessive and requires that he be denied qualified immunity.

Accordingly, Defendants' Objection #3 is OVERRULED.

**Objection #4**

Defendants' fourth objection simply asks the Court to apply the same implausibility and/or qualified immunity logic to dismiss Ms. Bomar's surviving state-law-battery claim.  For the reasons discussed above, Defendants' Objection #4 is OVERRULED.

C.     Plaintiff's Objections

Plaintiffs offer five objections – four factual objections, and one compound objection to the Magistrate Judge's recommendation for partial dismissal.

**Objection #1**

Plaintiffs object to the Magistrate Judge's finding that "the officers" saw that the driver of the fleeing vehicle was a young black male.  Plaintiffs state that only Officer Wood estimated the driver's age to be "probably . . . in his 20's."  Officer Wheatcroft gave no description, and Officer Main could not estimate the age.  Plaintiffs argue that this is relevant to determine the officers' reasonableness in pursuing 13-year-old K.M.

At the time the officers saw K.M., however, it was around 9:00 p.m., it was dark, K.M. appeared from behind a vehicle that matched the general description of the car they were following, and K.M. ran when told to stop.  The Magistrate Judge adequately summarized the *collective* impressions of the officers.  Moreover, this dispute is not material to the Magistrate Judge's conclusions.

Plaintiff's Objection #1 is OVERRULED.

**Objections #2 and #4**

Plaintiffs object that the Magistrate Judge improperly found that K.M. was waiting to "pick up" his dog after it relieved itself.  Similarly, they object that the Magistrate Judge stated that K.M. "stooped down on the driveway to pick up the dog and when he stood up, he observed" the officers.

Plaintiffs claim that although K.M. testified that he was waiting for the dog, he did not say that he was going to (or did) pick up the unleashed animal.  They claim that the suggestion that he was going to pick up the dog "leads to an inference that he ducked down behind the car in the

driveway, which would be consistent with the Defendant officers' testimony that it looked like someone was trying to hide behind the car and avoid their testimony."

As Plaintiffs concede, however, the officers *did* testify that K.M. was "ducked down" and "appeared on the other side of the car like [he] had stood up." K.M.'s testimony does not contradict this statement. Whether K.M. was picking up his dog at the time is not material.

Plaintiffs' Objections #2 and #4 are OVERRULED.

**Objection #3**

Plaintiffs object to Magistrate Judge's finding that Defendant Main caught up to K.M. as he was "attempting to enter the back door of his house." They argue that the Magistrate Judge's findings suggest that Main stopped in the doorway, when he actually entered the home.

The Report acknowledges that Officer Main "ultimately went a few steps into the house. There is no controversy that Main went past the threshold of the door and entered the house." (Report at 5). The Report accurately described the "intrusion" into Plaintiffs' home and properly analyzed the legal implications arising from that intrusion.

Plaintiffs' Objection #3 is OVERRULED.

**Objection #5**

**1.      Dismissal of Plaintiffs' 42 U.S.C. § 1983 Claims for Pre-Handcuff Activity**

*(a)      Dismissal of Unlawful Entry and Seizure Claims*

Plaintiffs' object to Magistrate Judge Hluchaniuk's recommendation to dismiss the unlawful entry and seizure claims *except* Officer Main's alleged post-handcuff actions towards Ms. Bomar. This objection, however, is exactly the type of "general objection, or one that merely restates the arguments previously presented." *Aldrich*, 327 F. Supp. 2d at 747. Plaintiffs have not identified any

alleged errors on the part of the Magistrate Judge, other than his disagreement with their previously-offered arguments.[6]  Accordingly, I find this objection to be WAIVED and OVERRULED.  *See Id.* at 747-48.  ("A general objection to the magistrate's report has the same effect as a failure to object.").

Even if I found this objection to be properly preserved, I agree with Magistrate Judge Hluchaniuk's thorough analysis.  The officers' mistakes in pursuing K.M. were objectively reasonable in the circumstances.  They were chasing a tan or pewter four-door taurus-like sedan, driven by a lone young black male.  The vehicle had just sped away from the scene of a drug raid, apparently after having seen the presence of police officers.  The officers reasonably believed the vehicle contained drugs and/or weapons.[7]  One street away, a few minutes later, the officers identified a tan taurus in a driveway, and a lone black male "appeared" from behind that vehicle.  He was not of slight build like a child; but was 5'4", 170 pounds.[8]  When the officers told him to

---

[6]Plaintiffs also recite the facts of several cases finding exigent circumstances sufficient to justify a warrantless entry into a home.  All cases have different facts.  Plaintiffs' recitation does not explain why the factual posture of those cases renders the *law* inapplicable to this case.

[7]The officers had received phone calls *on a drug dealer's phone*, from persons who stated that they were coming to the home with drugs and weapons.  This type of phone call is not similar to an anonymous 911 call, where the callers know their actions can trigger police response, and those callers may have illegitimate motives in placing those calls.  The callers in this circumstance *believed they were calling a drug (and weapons) dealer*.  There is no indication that they knew their calls had been intercepted by the police, which could create a motive to provide false statements or mislead the police.  *See State v. Carroll*, 778 N.W.2d 1, 12-14 (Wis. 2010) (finding evidence received from intercepted phone calls may serve as reasonable cause for arrest (citing *U.S. v. De La Paz*, 43 F. Supp. 2d 370 (S.D.N.Y. 1999) (finding exigent circumstances justify answering cell phone used for illegal drug activity))).

[8]Plaintiffs also argue that Defendant Wood conceded that K.M. "obviously" was not the person they were after.  Wood testified that after the situation was controlled, they released the handcuffs because K.M. "was obviously – he was smaller than the person that we thought and he was 13 years old and he was in his own backyard looking for his dog."  Wood also testified, however, that at the time he noticed the individual ducking down by the car, he could not make an

stop, he fled. The officers gave chase. He entered a home, which the officers had no reason to believe was his own.[9]

In these circumstances, the officers' actions in chasing a person whom they reasonably believed could be a fleeing and possibly dangerous suspect into a home, although mistaken, were objectively reasonable. The Court cannot apply 20/20 hindsight to calmly assess K.M.'s innocent explanation for his actions and deem the officers' split-second decisions unreasonable. Their actions were not based on mere hunches, or utter speculation, but on "*specific reasonable inferences which [officers are] entitled to draw from the facts in light of [their] experience*." *United States v. Atchley*, 474 F.3d 840, 847 (6th Cir. 2007) (citation omitted) (emphasis added).

The officers' warrantless entry of the home was justified under the exigent circumstances exception to the Fourth Amendment. The Sixth Circuit has summarized the analysis for exigent circumstances as:

> Exigent circumstances exist where there are real immediate and serious consequences that would certainly occur were a police officer to postpone action to get a warrant. The relevant inquiry is whether the facts are such that an objectively reasonable officer confronted with the same circumstances could reasonably believe that exigent circumstances existed. Three types of circumstances have traditionally been found to constitute exigent circumstances: (1) when the officers were in hot pursuit of a fleeing suspect; (2) when the

_____

estimation of that person's age. Wood's complete testimony, therefore, establishes that the mistaken identity was not "obvious" until after K.M. and Ms. Bomar were handcuffed.

[9]Plaintiffs challenge the officers' reasonable perception of a possible home invasion. They argue that once Ms. Bomar told Defendant Main to "get out of her house", it should have been clear that there was no home invasion. This statement, however, was not made until *after Main was in the house*. By that time, Ms. Bomar admitted that she was already attacking Main. A police officer can take reasonable steps to protect himself. *See Van Vorous v. Burmeister*, 687 N.W.2d 132, 137 (Mich. App. 2004) (citation omitted). Because Main was being attacked by Ms. Bomar, it certainly was reasonable for him to restrain her.

> suspect represented an immediate threat to the arresting officers and public; [and] (3) when immediate police action was necessary to prevent the destruction of vital evidence or thwart the escape of known criminals.

*Ewolski v. City of Brunswick*, 287 F.3d 492, 501 (6th Cir. 2002) (internal alterations, citations, and quotation marks omitted). In this case, an objectively reasonable officer confronted with the same circumstances reasonably could have believed that exigent circumstances existed under either the first (hot pursuit of a fleeing suspect) or second (immediate threat to the public) test.

Plaintiffs argue that the exigent circumstances exception does not apply because the officers created the exigency. Plaintiffs suggest that because the officers were in plain clothes, did not identify themselves as police officers upon initially encountering K.M., and drew their weapons as they approached K.M., *they* caused K.M. to flee into the home, and thus they created any exigent circumstances that existed. Plaintiffs cite only *United States v. Morgan*, 743 F.2d 1158, 1161 (6th Cir. 1984) in support of their argument. But *Morgan* is easily distinguishable. In that case, the officers waited hours between witnessing the commission of a crime and arresting the suspect. During that time, they made no attempt to obtain a warrant, but found time to assemble nearby to "assess the situation" and devise a strategy. *Id*. at 1160-61. The court found they were *not* in hot pursuit, and there was no reason to believe the suspects were engaged in a home invasion or were otherwise a danger to the public. *Id*. at 1163. In this case, by contrast, the pursuit of the fleeing vehicle and the subsequent pursuit of the fleeing suspect (K.M.) happened within a short time of the officers' receipt of a phone call notifying them of the imminent arrival of a drug and weapons dealer. The officers had no time to seek a warrant, as they were in hot pursuit of a suspect whom they reasonably believed could have been armed and may have entered the home of an innocent neighbor to evade the officers' chase.

Moreover, "the created-exigency cases have typically required some showing of deliberate conduct on the part of the police evincing an effort intentionally to evade the warrant requirement." *Ewolski,* 287 F.3d at 504. There is no evidence in this case that the officers deliberately altered their attire or behavior to incite K.M. to flee into the nearby home so that they could justify a warrantless entry. Instead, the undisputed evidence indicates that the officers approached K.M. to ascertain if he was their suspect; K.M. fled, and the officers followed. *See id.* at 504-05 (explaining that the officers' "strategic decision not to identify themselves immediately may have been ill-advised, and may even have contributed to the [suspect's behavior creating exigent circumstances], this conduct did not give rise to a claim that the police impermissibly created the exigency."); *see also United States v. Ponder*, 240 F. App'x 17, 21 (6th Cir. 2007) (finding no "created-exigency" where the officers were "properly conducting an ongoing investigation that had begun just a few hours earlier" and "the exigent situation naturally arose when [the officers] observed [the suspect] flee into the house.").

Accordingly, the exigent-circumstances exception to the Fourth Amendment applies to the officers' warrantless entry of Plaintiffs' home. And, for the reasons the Magistrate Judge offered, the brief detention of K.M. and Ms. Bomar (who admits to battering Officer Main in defense of herself and her son) was appropriate under the circumstances.

As the Magistrate Judge concludes, this case does not turn on which version of facts one accepts. (Dkt. 46 at 34). Accordingly, I OVERRULE Plaintiffs' Objection #5(1)(a), ADOPT Magistrate Judge Hluchaniuk's recommendation as to these claims, and GRANT Summary Judgment to Defendants on Plaintiffs' unlawful entry and seizure claims.

*(b)     Dismissal of Excessive Force Claims*

16

Plaintiffs next object to the dismissal of Plaintiff K.M.'s excessive force claim and Plaintiff Germaine Bomar's excessive force claim up to and including the time she was handcuffed. Turning first to K.M.'s claim, Plaintiffs argue that Defendant Wood testimony that K.M. came out of the house "on his own volition" and thereafter "offered no resistance" establishes that *any amount* of force on this "child" was excessive. The unrebutted testimony, however, is that K.M. had run from the officers, disobeyed repeated commands to stop, resisted officers' attempts to pull him from the home, and refused to exit the house until *after* the alleged blow to his forehead (which Plaintiffs' concede occurred in the home before K.M. was handcuffed). Moreover, Defendants had no knowledge that K.M. was "a child" until after the situation was secured. In these circumstances, I agree with Magistrate Judge Hluchaniuk's conclusion that the officers' actions were objectively reasonable as to K.M.

As for Germaine Bomar's claims of excessive force up to and including her handcuffing, Ms. Bomar argues that because the officers were dressed in civilian clothes and did not identify themselves as police, she did not "know or have reason to know" that Officer Main was a police officer. Thus, argues Ms. Bomar, she could not "be responsible for an assault and battery upon a police officer" and "any actions she took with regard to [Officer Main] should be viewed as self-defense of herself and her children from an unknown intruder, not an assault upon a police officer." The Court generally agrees with Plaintiffs' arguments. Those arguments, however, establish only that Ms. Bomar should not be held criminally liable for assault and battery of a police officer. They do not defeat the Magistrate Judge's finding that the force used in detaining and handcuffing Ms. Bomar was objectively reasonable in light of the officers' split-second assessment of the situation.

I OVERRULE Plaintiffs' Objection #5(1)(b), ADOPT Magistrate Judge Hluchaniuk's

recommendation with respect to these claims, and GRANT Summary Judgment for Defendants on Plaintiffs' excessive force claims up to and including the point the Plaintiffs were handcuffed. Of Plaintiffs' constitutional claims, *only* Plaintiff Germaine Bomar's excessive force claim against Defendant Main for actions *after* Ms. Bomar was handcuffed survives.

## 2. Dismissal of Plaintiffs' State Law Claims

### (a) Dismissal of Assault and Battery Claims

Plaintiffs object that, for the reasons argued in Objection #5(1), the state law claims of assault and battery should be permitted to go to trial. For the reasons stated above, I OVERRULE this objection, ADOPT the Magistrate Judge's recommendation as to these claims, and GRANT Summary Judgment to Defendants on Plaintiffs' state law claims of assault and battery *except* for Plaintiff Germaine Bomar's battery claim against Defendant Main for actions *after* she was handcuffed.

### (b) Dismissal of Intentional Infliction of Emotional Distress Claims

Plaintiffs object that the Magistrate Judge's improper determination that the officers' actions were objectively reasonable led to an improper conclusion that Plaintiffs' IIED claims should be dismissed. Upon closer examination of the Report, however, the Magistrate Judge apparently intended to recommend that Plaintiff Germaine Bomar's IIED claim should survive, and Plaintiff K.M.'s claim should be dismissed.

Having conducted a *de novo* review of the law and evidence, I find that Plaintiff Germaine Bomar and K.M.'s IIED claims should be dismissed. Under Michigan law, to establish a prima facie case of IIED, a plaintiff must establish: (1) the defendant's extreme and outrageous conduct; (2) the defendant's intent or recklessness; (3) causation; and (4) severe emotional distress actually suffered

by the plaintiff. *Lavack v. Owens World Wide Enter. Network, Inc.*, 409 F. Supp. 2d 848, 857 (E.D. Mich. 2005). Plaintiffs Germaine Bomar and K.M., however, provided no admissible evidence on the fourth prong of this test.[10] Plaintiffs' Response to Defendants' Motion for Summary Judgment Based On Qualified Immunity states that "[a]ll three plaintiffs have been treated for psychological counseling as a result of the incident that occurred September 11, 2007." (Dkt. 29 at 25). In support of this fact, however, Plaintiffs attach only a Psychological Evaluation Report dated November 3, 2008 (well after this lawsuit was filed) regarding Plaintiff Germaine Bomar.[11] The Psychological Evaluation Report indicates that Ms. Bomar was referred by her attorney to a psychologist approximately one year after the incident. (Dkt. 29, Ex. I). Plaintiffs' counsel indicated that he was "waiting for an updated report . . . that will also include [the psychologist's] diagnosis for the Plaintiff's minor children, as well as an updated diagnosis for Germaine Bomar, which the Plaintiff's [sic] would like to submit subsequently." (Dkt. 29 at 26). Despite the Magistrate Judge's offers for Plaintiffs to file supplemental briefing, (Aug. 11, 2009, Dkt. Minute Entry ("Plaintiff to submit supplemental brief in 7 days."); August 11, 2009, Tr. at 70-73), Plaintiffs never did so.

Unsworn expert reports are hearsay,[12] and may not be considered on Summary Judgment.

---

[10] Defendants' Motion for Summary Judgment Based Upon Qualified Immunity (Dkt. 20) argued that Plaintiffs were unable to present evidence of severe emotional distress (Dkt. 20 at 38-39), putting Plaintiffs on notice that they must present sufficient evidence of this factor to withstand summary judgment.

[11] The hearsay report is replete with Ms. Bomar's hearsay allegations about the incident, and its supposed psychological effects. Even if the report was admissible, statements by Ms. Bomar contained therein are inadmissible double hearsay.

[12] Although Defendants did not argue that the Psychological Evaluation Report is inadmissible hearsay, this Court may *sua sponte* consider the admissibility of evidence in evaluating a motion for summary judgment. *See, e.g., Wilson v. State of Ohio*, 178 Fed. App'x 457, 463 (6th Cir. 2006) ("As an initial matter, the district court was correct in raising [*sua sponte*] the admissibility of the statement. It is clear that, in responding to a motion for summary judgment,

Fed. R. Civ. P. 56; *Sigler v. American Honda Motor Co.*, 532 F.3d 469 (6th Cir. 2008) ("the district court improperly considered Honda's unsworn, hearsay [expert reports] in deciding to grant Honda's motion for summary judgment"); *Pack v. Damon Corp.*, 434 F.3d 810, 815 (6th Cir. 2006) ("the Bukowski Report is unsworn and thus is hearsay, which may not be considered on a motion for summary judgment."). I find the unsworn Psychological Evaluation Report is inadmissible hearsay. Without this evidence, Plaintiffs have offered no admissible evidence of Germaine Bomar or K.M.'s severe emotional distress.

Accordingly, Plaintiffs Germaine Bomar and K.M. have failed to establish their *prima facie* IIED claims, and those claims are DISMISSED. To the extent Magistrate Judge Hluchaniuk's Report contradicts this conclusion, it is REJECTED.

Finally, the Magistrate Judge recommended dismissal of Plaintiff K.B.'s IIED claim because the officers took no action with respect to K.B. (thus defeating the intent requirement). Plaintiffs object that this finding is "contrary to the facts and law." Specifically, Plaintiffs argue that Defendants "invaded her home." Because I find that the officers' entry of Plaintiffs' home was reasonable under the circumstances, the "invasion" cannot serve as the basis for an IIED claim. *See Van Vorous*, 687 N.W.2d at 142 (holding that where the officers' conduct was "reasonable, or at the very least, the result of a reasonable mistake, plaintiff could not, as a matter of law, succeed in showing that the conduct was simultaneously extreme and outrageous.").

Plaintiffs have failed to offer any law suggesting that Defendant Main's alleged actions toward Ms. Bomar after she was handcuffed (the conduct underlying the only remaining claims) can

---

Wilson must produce *admissible* evidence to create a genuine issue of material fact." (emphasis in original)).

establish the intent or extreme-and-outrageous elements of an IIED claim by K.B., *a witness to those events*. Nor have Plaintiffs overcome the Magistrate Judge's finding that Plaintiffs' failure to allege a claim of negligent infliction of emotional distress – the Michigan claim permitting bystander recovery for emotional distress[13] – is fatal to K.B.'s claim. Having failed to raise those arguments, Plaintiffs have waived them.

Accordingly, Plaintiffs' objections regarding their IIED claims are OVERRULED, Defendants' Motion for Summary Judgment Of The Claims Brought By K.B. is GRANTED, and K.B.'s claims are DISMISSED.

**Plaintiffs' Alleged Genuine Issues of Material Fact**

Although not stated within any specific objection, Plaintiffs provide a laundry list of alleged factual disputes, which they contend preclude summary judgment on any of Plaintiffs' claims:

(1) whether K.M. appeared to be hiding behind the car;
(2) whether Defendants were in uniform or not;
(3) whether Defendants identified themselves as police officers;
(4) whether Defendants entered Plaintiffs' home through an open door or closed door;
(5) whether Defendants used excessive force relative to Plaintiffs K.M. and Germaine Bomar; and
(6) whether Germaine Bomar knowingly assaulted a police officer.

Although I am not compelled to address these improperly-raised objections, I will quickly do so:

(1) The officers testified that K.M. appeared from behind the car. K.M. testified that when he saw the officers, he was standing. He did not testify that he was not bent down at any point in time. K.M.'s testimony is not inconsistent with the officers' testimony.

(2) and (3) Plaintiff has offered no authority to suggest that the officers' legal entitlement

---

[13]*See Hesse v. Ashland Oil, Inc.*, 642 N.W.2d 330, 336-37 (Mich. 2002).

to pursue K.M., whom they reasonably but mistakenly believed was a fleeing suspect involved in (the drug/weapons transaction) or about to be involved in (a home invasion) a crime, was dependent on their attire or whether they explicitly identified themselves as officers. And, to the extent Plaintiffs premise their "created-exigency" argument on these alleged factual disputes, I have rejected that argument for the reasons described above.

(4) There is no dispute that the officers entered the home. In the factual circumstances of this case, whether that entry was through an open or closed door is immaterial to the analysis.

(5) Whether the officers used excessive force is a legal conclusion, not a factual dispute. The material factual disputes have been resolved in Plaintiffs' favor for the purposes of this analysis.

(6) Germaine Bomar admits that she was hitting Officer Main. As a police officer reasonably acting in the scope of his employment, Main was entitled to defend himself with reasonable force. Plaintiff has identified no law to suggest this entitlement turns on whether Ms. Bomar *knew* that the person whom she was battering was a police officer.

## IV. CONCLUSION

Having reviewed each objection and conducted a *de novo* review of the record and law, Plaintiffs' objections are OVERRULED; Defendants' objections are OVERRULED; Magistrate Judge Hluchaniuk's Report is ADOPTED IN PART and REJECTED IN PART; Defendants' Motion For Summary Judgment Of The Claims of K.B. is GRANTED; Defendants' Motion For Summary Judgment Based On Qualified Immunity is DENIED IN PART WITHOUT PREJUDICE[14] and GRANTED IN PART, as follows:

---

[14]If the facts at trial establish that Defendant Main's post-handcuffing actions toward Ms. Bomer were objectively reasonable, he may move for judgment on qualified immunity at that time.

Plaintiffs' claims against Defendants Wood and Wheatcroft are DISMISSED WITH PREJUDICE;

Plaintiffs' claims against Defendant Main are DISMISSED WITH PREJUDICE *except for* Plaintiff Germaine Bomar's claims against Defendant Main for (1) § 1983 / excessive force for the alleged jaw punch and pepper spray after she was handcuffed; and (2) state-law battery for those same actions after she was handcuffed.

**IT IS SO ORDERED.**

Date: August 17, 2010                              s/John Feikens
                                                   John Feikens
                                                   United States District Judge

+-------------------------------------------------------+
|                   Proof of Service                    |
|                                                       |
|   I hereby certify that the foregoing order was served on |
|   the attorneys/parties of record on August 17, 2010, by |
|   U.S. first class mail or electronic means.          |
|                                                       |
|                        s/Carol Cohron                 |
|                        Case Manager                   |
+-------------------------------------------------------+